IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY ZIELINSKI, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>SAZERAC COMPANY, INC.,<br><br>                      Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Larry Zielinski ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Sazerac Company, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action lawsuit on behalf of purchasers of the Fireball Cinnamon malt beverage (the "Malt Product") against Defendant for manufacturing, marketing, distributing, and selling underfilled and mislabeled alcoholic beverages.

2. Sazerac manufactures, markets, and distributes alcoholic beverages under the brand name "Fireball." Defendant's Fireball Cinnamon Whisky (the "Whiskey Product") (together with the Malt Product, Defendant's "Alcohol Products") has become "one of the most popular drinks to down – particularly in shot form."[1] The Whiskey Product is so popular that the brand name "Fireball" has become synonymous with Defendant's Whiskey Product.[2]

---

[1] *See* https://whiskeyraiders.com/article/is-fireball-whiskey/.
[2] *Id.*

1

3.      Defendant engaged in widespread false and deceptive advertising in connection with its Malt Products. In a practice that runs contrary to reasonable consumer expectations, Defendant employs a classic bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of alcohol they believe they are purchasing – and induces them to buy a fundamentally different product entirely. Specifically, the packaging and labeling of the Malt Products prominently advertise that they are "Fireball Cinnamon" products, which consumers understand to refer to Defendant's Whiskey Products. However, "Fireball Cinnamon" is not a whiskey product it all; it is a malt beverage with half the alcohol of whiskey.

4.      In this case, Plaintiff purchased a Malt Product that prominently advertises on its front labels that it is "Fireball Cinnamon," and includes the same style of label and logo as Defendant's Whiskey Products. The Malt Product contains only 16.5% alcohol by volume (ABV), which is half that of Defendant's more popular Whiskey Product (33% ABV). Thus, the Malt Product purchased by Plaintiff contained only half of the alcohol content present in Defendant's Whiskey Product.

5.      Defendant's Whiskey Product[3] is a concoction of whiskey, sweetener, and cinnamon flavoring. Fireball Whisky has been on the market since the 1980s and is one of the most popular whiskey products in the United States. Fireball Whisky is found in nearly every well-stocked bar and liquor store.

6.      In contrast, the Malt Product has only been offered for sale for several years, and it enjoys nowhere near the success of Fireball Whiskey. The vast majority of reasonable consumers do not know that the Malt Product even exists.

---

[3] Fireball was developed in Canada, where "whiskey" is spelled "whisky." Accordingly, the brand is formally called "Fireball Whisky," but in the United States such products are generically referred to as "whiskey."

7. Fireball Malt is a "malt beverage with natural whisky & other flavors and caramel color." At merely half of the Whiskey Product's ABV (i.e., 16.5% ABV compared to 33% ABV), Defendant's Malt Product features a stark difference in alcohol quantity. This is because, as a malt-based beverage, the Malt Product is not "liquor" in the sense that it is not a distilled spirit such as whiskey – which serves as the base for Defendant's Whiskey Product. Rather, the Malt Product features "malt" as its base, which is boiled like beer and fermented with yeast.[4] Thus, the Malt Product contains nowhere near the alcohol content of whiskey, and it is not a whiskey product at all.

8. Despite these key differences, the front labels of Defendant's Whiskey Product and Malt Product are nearly identical. Both products come in similar clear, plastic bottles. Both products have the same signature red cap. Both products have the same coloring and look the same upon inspection. Both products are labeled "Fireball," with the same font, font size, and placement. Both products have the same logo of a red demon, with similar size and placement. Both products say "Cinnamon" under the logo:

---

[4] *See* https://thestir.drizly.com/behind-the-bottle/what-is-malt-liquor/#:~:text=Malt%20liquor%20isn't%20%E2%80%9Cliquor,the%20light%20lager%20beer%20style.

 

9. The nearly-identical labeling between these two products serves one purpose – an intent to deceive reasonable consumers. Notably, Fireball Malt does not disclose the alcohol percentage (i.e,. ABV) anywhere on the front of the packaging. Nor is it evident from the labeling that it is not a whiskey product, but rather a malt product, especially to reasonable consumers who are familiar with Fireball's vastly-popular whiskey product. Based on the nearly identical labels, logo, and branding, reasonable consumers such as Plaintiff would understand these two Alcohol Products to be the same and therefore expect Fireball Cinnamon to be a whiskey product with the alcohol content as whiskey.

10. In fact, Defendant prepared for reasonable consumers to be confused by its branding, and even included a "How Can I Tell The Difference Between Fireball Cinnamon And Fireball Whisky Products?" question on its website's FAQ page. Even so, the FAQ does not disclose that Fireball Malt contains only half the alcohol as Fireball Whisky:[5]

> **HOW CAN I TELL THE DIFFERENCE BETWEEN FIREBALL CINNAMON AND FIREBALL WHISKY PRODUCTS?**
>
> There are 2 key differences between the Fireball Cinnamon labels vs the Fireball Whisky label:
> - Any package with Fireball 'Cinnamon **Whisky**' on the front label is our whisky-based product
> - Any product with Fireball 'Cinnamon' on the front label, without 'Whisky', is either our malt-based or wine-based product

11. Despite knowing that its labeling practices were ripe for consumer confusion, Defendant chose to continue to affirmatively misrepresent its Malt Products with labels practically identical to its Whiskey Products.

12. The amount of ABV in the Malt Product is material to consumers who purchase Defendant's Malt Product. The Malt Products are marketed as alcoholic beverages under the umbrella branding "Fireball," which is widely known as a whiskey beverage. The alcohol strength and effects that come from drinking a Malt Product are wildly different than those that come from drinking a Whiskey Product. Consumers expecting to enjoy a whiskey product are not expecting to receive a malt product.

13. Thus, reasonable consumers seeking the taste and effects of a Whiskey Product with 33% ABV are harmed by the accidental purchase of a Malt Product at 16.5% ABV. Nor do reasonable consumers expect to receive a malt beverage when they intend to purchase a whiskey product.

---

[5] *See* https://www.fireballwhisky.com/faqs.html.

14. Plaintiff, the Class, and Subclass Members relied to their detriment on Defendant's unclear and fraudulent omissions on its Malt Product labels regarding the strength of alcohol present in each bottle. Plaintiff and Class and Subclass Members would not have paid to purchase Defendant's Malt Products – or would not have paid as much as they did to purchase them – had they known the truth about the Malt Products' actual alcohol content. As such, Plaintiff and Class members paid a price premium for the Malt Products, and were induced to purchase an altogether product they had not intended to buy at all. Plaintiff and Class and Subclass Members thus suffered monetary damages as a result of Defendant's deceptive and false representations and omissions.

## PARTIES

15. Plaintiff Larry Zielinski is a citizen of New York. In or around November 2022, Mr. Zielinski purchased three bottles of Fireball Cinnamon malt – two larger bottles for approximately $8.00 each, and one mini bottle for approximately $1.25 – from Edson Minimart located in Buffalo, New York. Prior to his purchase, Mr. Zielinski reviewed each Malt Product's labeling and saw that the bottles were labeled "Fireball Cinnamon." Plaintiff Zielinski saw these representations prior to, and at the time of purchase, and understood them as representations that the Fireball Cinnamon Malt Products were, in fact, the same or substantially similar to the Fireball Cinnamon Whiskey Products. Plaintiff relied on these representations in purchasing the Malt Product, and the alcohol content level was material to Plaintiff Zielinski. Accordingly, these representations and warranties were part of the basis of the bargain in that, had Plaintiff Zielinski known that the Malt Products contained half of the alcohol content than Defendant's Whiskey Products – and was not a whiskey at all, but rather a different beverage entirely – he would not have purchased the Malt Product or would have paid significantly less for it. Plaintiff did not see, nor did he have any reason to see, any purported disclaimers stating that the Malt

6

Product was a malt-based beverage as a separate and distinct product from Defendant's popular whiskey-based beverage. Plaintiff is susceptible to this recurring harm because he cannot be certain that Defendant has corrected this deceptive and false advertising scheme, and he wants to continue to purchase Defendant's Alcohol Products. Plaintiff greatly enjoys Fireball Whisky, but he currently cannot trust that Defendant will label and/or advertise its Alcohol Products truthfully and accurately. Plaintiff simply does not have the resources to ensure that Defendant is complying with state and federal law with respect to the labeling and advertising of its Alcohol Products.

16. Defendant Sazerac Company, Inc. is a Louisiana corporation with its principal place of business at 101 Magazine Street, 5th Floor, New Orleans, Louisiana 70130. Defendant manufactures, markets, sells, and distributes the Malt Products throughout the United States and the State of California. Defendant sold the Malt Products with the aforementioned representations during the class period.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of the proposed class exceed $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and Plaintiff, as well as many members of the proposed class, is a citizen of a state different from Defendant.

18. This Court has personal jurisdiction over Defendant. Defendant does business in New York and has sufficient minimum contacts with this state, including within this District, and/or has otherwise intentionally availed itself of the New York consumer market through the promotion, marketing, and sale of its products to residents within this District and throughout New York. Additionally, Plaintiff purchased his Malt Product in New York.

19.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Also, Plaintiff resides in this District and purchased Defendant's Malt Product in this District.  Moreover, Defendant distributed, advertised, and sold the Malt Product to the members of the Class, which is the subject of the present complaint, in this District.

## CLASS ALLEGATIONS

20.     **Nationwide Class Definition:** Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States who have purchased Fireball Cinnamon malt beverages during the applicable statute of limitations period (the "Nationwide Class").

21.     **New York Subclass Definition:** Plaintiff Zielinski seeks to represent a subclass consisting of all Class Members who purchased the Fireball Cinnamon malt beverages in the State of New York during the relevant statute of limitations period (the "New York Subclass").

22.     The Nationwide and New York Subclass are collectively referred to as "Classes." Subject to additional information obtained through discovery and further investigation, the above-described Classes may be modified or narrowed as appropriate.

23.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

24. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** A well-defined community of interest exists in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

    (a)    whether the marketing labeling and advertisements for the Malt Products were false and misleading;

    (b)    whether Defendant's conduct was unfair and/or deceptive; and

    (c)    whether Plaintiff and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

25. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, were exposed to Defendant's false and misleading marketing, purchased the Malt Product in reliance on Defendant's false and misleading representations, and suffered a loss as a result of that purchase.

26. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Classes. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiff has raised viable common-law and statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims.

27. **Superiority (Fed. R. Civ. P. 23(b)(3)):** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of

individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### COUNT I
### Violation Of New York's Gen. Bus. Law § 349
### (On Behalf Of The New York Subclass)

28.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

29.     Plaintiff Larry Zielinski brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

30.     Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the alcohol content of its Malt Products to mislead consumers into believing the Malt Products have equivalent quantities of alcohol as its Whiskey Products.

31.     Plaintiff Zielinski has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff purchased the Malt Product for his own personal use.  In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Malt Products were equivalent to the Whiskey Products.  Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising

claims.

32. Defendant's deceptive acts and practices were directed at consumers.

33. Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase Malt Products and/or pay more for them under the false – but reasonable – belief that Malt Products were Whiskey Products, when they are not. By advertising Malt Products so similarly to Whiskey Products, Defendant proves that classic Fireball branding is material to consumers. If such information were not material, Defendant would not advertise the two very different products so similarly. As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Malt Products to unsuspecting consumers across New York. If Defendant had advertised its Malt Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

34. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff and other Members of the New York Subclass were injured in that they: (1) paid money for Malt Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Malt Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Malt Products they purchased had less value than Defendant represented.

35. On behalf of himself and Members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover his actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**Violation Of New York's Gen. Bus. Law § 350**
**(On Behalf Of The New York Subclass)**

36.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

37.     Plaintiff Larry Zielinski brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

38.     Defendant engaged in a campaign of false advertising with regard to the alcohol content of Malt Products to mislead consumers into believing the Malt Products they purchase are Whiskey Products.

39.     Plaintiff Zielinski has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff purchased the Malt Product for his own personal use.  In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Malt Products were equivalent to the Whiskey Products.  Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

40.     Defendant's deceptive acts and practices were directed at consumers.

41.     Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendant had advertised its Malt Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Malt Products or would not have paid as much as they did for them.

42.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff and other Members of the New York Subclass were

injured in that they: (1) paid money for Malt Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Malt Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Malt Products they purchased had less value than Defendant represented.

43. On behalf of himself and Members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover his actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Fraud
**(On Behalf Of The Classes)**

44. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

45. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

46. This claim is brought under the laws of the State of New York.

47. As alleged above, Defendant provided Plaintiff and Class members with false or misleading material information about the Malt Product, including that it is a whiskey product with similar ingredients, composition, and alcohol content in line with a whiskey product and not a malt beverage.

48. These misrepresentations were made with knowledge of their misleading nature, as evidenced by the fact that Defendant merely replicated its Whiskey Product's label for use on its Malt Product without obvious clarifiers on the front-facing representations concerning the alcohol content of the Malt Product, or any conspicuous disclosure that it was a different product altogether.

49. The misrepresentations made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and Class members to purchase the Malt Product.

50. The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
### Fraudulent Omission
### (On Behalf Of The Classes)

51. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

52. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

53. This claim is based on fraudulent omissions concerning the quality of the Malt Product. As discussed above, Defendant failed to adequately disclose the difference between its Malt Product and its Whiskey Product.

54. The false and misleading omissions were made with knowledge of their falsehood. Defendant is a nationwide alcoholic beverage company who knew of reports of confusion between its two Fireball products. Nonetheless, Defendant continued to sell its Malt Products to unsuspecting consumers.

55. The false and misleading omissions were made by Defendant, upon which Plaintiff and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Classes to purchase the Malt Product.

56. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Classes, who are entitled to damages and punitive damages.

## COUNT V
## Unjust Enrichment
### (On Behalf Of The Classes)

57. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

58. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

59. Plaintiff and members of the Classes conferred benefits on Defendant by purchasing the Malt Product.

60. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class and Subclass Members' purchases of the Malt Product. Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Malt Product contained half the alcohol content of its Whiskey Product, or that it was a different type of beverage altogether. These omissions caused injuries to Plaintiff and members of the Classes because they would not have purchased the Malt Product or would not have paid as much for the Malt Product if the true facts were known.

61. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT VI
## Breach of Express Warranty
### (On Behalf Of The Classes)

62. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

63. Plaintiff brings this claim individually and on behalf of the Members of the proposed Classes against Defendant.

64. As the designer, manufacturer, marketer, distributor, and/or seller of Malt Products, Defendant issued an express warranty by representing to consumers at the point of purchase that each Malt Product would contain a certain alcohol content and that it was a beverage identical to, or similar to, Fireball Whisky. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class and Subclass.

65. In fact, the Malt Products do not conform to Defendant's representations about alcohol content. Each Malt Product contains half the advertised alcohol content. By falsely representing the Malt Products in this way, Defendant breached express warranties.

66. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they: (1) paid money for Malt Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Malt Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Malt Products they purchased had less value than what Defendant represented. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class and Subclass Members would not have purchased the Malt Products or would not have paid as much as they did for them.

## COUNT VII
### Breach of Implied Warranty
### (On Behalf Of The Classes)

67. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

68. Plaintiff brings this claim individually and on behalf of the Members of the proposed Classes against Defendant.

69. Defendant routinely engages in the manufacture, distribution, and/or sale of Malt

Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

70. Plaintiff Zielinski and Members of the Class and California Subclass were consumers who purchased Defendant's Malt Products for the ordinary purpose of such products.

71. By representing that the Malt Products would contain a certain alcohol percentage, and via false and misleading labeling by representing the Malt Products as akin to Fireball Whisky, Defendant impliedly warranted to consumers that the Malt Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances (i.e., whiskey).

72. However, the Malt Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances. In fact, they are not whiskies at all. Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

73. As a direct and proximate result of Defendant's breach, Plaintiff Zielinski and Members of the Class and California Subclass were injured because they paid money for Malt Products that would not pass without objection in the trade or industry under the contract description.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: April 5, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Philip L. Fraietta*
   Philip L. Fraietta

Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant*
Jenna L. Gavenman*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
   jgavenman@bursor.com

*Attorneys for Plaintiff*

**Pro Hac Vice Application Forthcoming*